IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| COMMUNICATION WORKERS OF AMERICA, AFL-CIO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 05-01220-CV-W-HFS |
| SOUTHWESTERN BELL TELEPHONE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Before the court is defendant's motion for summary judgment. Defendant contends that summary judgment is proper because (1) plaintiff's claims are barred by the statute of limitations; (2) the final decision of the arbitrator cannot be re-litigated; and (3) as a matter of law review of the arbitration award is barred.

Plaintiff has also moved for summary judgment, and contends that as a matter of law, it is entitled to confirmation and enforcement of the underlying arbitration award. Alternatively, plaintiff seeks to have the matter remanded to the arbitrator; or, to compel arbitration consistent with the underlying arbitration award.

## Background Fact

This case is before the court by way of transfer from the United States District Court for the Western District of Texas[1]. Plaintiff and defendant are parties to a collective bargaining agreement ("CBA"). On May 6, 2002, defendant declared a surplus in the Kansas City metropolitan area. Some of the employees affected by the surplus were employed by plaintiff and covered by the CBA. Specific to this litigation are senior report clerks Cynthia Glover, Nicole Jones, and Michael Owens ("the clerks"). Section 3(g) in Article XVII of the CBA states that surplus employees may displace junior non-surplus employees and avoid layoff if: (1) they did not receive a job offer during the surplus process; and (2) they perform "similar job functions" and possess "essentially the same skills" as the junior non-surplus employee.

Defendant implemented a form entitled Surplus Transfer Job Interest Survey Worksheet in which the clerks indicated the jobs they held an interest in, as well as those jobs they did not wish to pursue, i.e. an operator job or a console operator job. Hopefully, the "surplused" employee can be matched with a non-surplused employee who wishes to voluntarily leave the payroll. Plaintiff states that, on the surface, the operator position is considered a lateral transfer from a senior reports clerk position. However, since there is a difference in pay in the amount of $167.00, it is, in effect, a downgrade. Plaintiff notes that employees offered a lateral job must take it or they are deemed to have resigned.

Plaintiff states that the clerks were presented with priority request forms that offered to match them with employees holding the operator job title even though their credited service date

---

[1] Plaintiff has commenced suit on behalf of three of its members alleging wrongful termination. (11/23/05 Order Transferring Venue, doc. 7).

precluded them from holding the operator position[2], and they had indicated their disinterest in the operator position. On the priority request forms, the clerks indicated that they would take the operator job, but then subsequently declined the position. Consequently, defendant deemed the clerks ineligible to displace other employees, and they were ultimately laid off.

Plaintiff filed a grievance on their behalf, and pursuant to agreed upon provisions of the CBA, the dispute was mediated by an Arbitrator. In a decision dated March 25, 2005, the arbitrator found that the clerks noted their interest in the operator position on the Priority Offer Request Form even though they did not want the position because they believed they could not reject the offer of a lateral position. (JR: pg. 231). The clerks were ultimately matched with voluntary severance positions as a console operator which paid considerably less than the operator position. (Id: pg. 231-32). The clerks rejected the offer which disqualified them from the "bumping" process, and were laid off. (Id: pg. 232).

The arbitrator noted plaintiff's position that the forms utilized to implement the displacement process were confusing, and failed to adequately notify employees of their actual choice. (Id: pg. 233). The arbitrator also noted plaintiff's contention that the clerks reasonably believed that they were obliged to make themselves available for the operator position or it would be construed as rejection of a lateral offer, and have a potentially serious impact on their job tenure. (Id). Further noted was plaintiff's contention that the result was that the clerks were offered placement as console operators, a downgraded position. (Id). Plaintiff requested that the grievance be granted; that the

---

[2]According to plaintiff, the parties agreed that employees with a new credited service date (the commencement date of employment with defendant) after November 6, 1995, could not hold the operator job title. (Plaintiff's Suggestions in Support of Summary Judgment: pg. 3, ¶ 12).

clerks be immediately reinstated; and that the matter be remanded to the parties to determine appropriate back pay and other remedies. (Id).

The arbitrator noted that conversely, defendant argued that the choices on the forms were clear, and that it properly disallowed displacement. (Id). Further noted was defendant's claim that the clerks knowingly applied for the operator jobs listed on the form, and given their seniority, were properly offered the position of console operator. (Id). Defendant requested that the grievance be denied.

After reviewing the evidence, the arbitrator found that the Priority Offer Request Form was confusing in several respects, and that plaintiff satisfied its burden of demonstrating that the clerks could reasonably have misunderstood the impact of the form, and should not be bound by their indication of interest in a position they did not want. (Id: pg. 237). However, the arbitrator found the record unclear as to whether the clerks could have avoided layoff even if they had responded properly. Thus, the arbitrator returned the matter to the parties for review and reconstruction of events that would have followed had the clerks completed the forms accurately in conformance with their wishes, and to then fashion an appropriate remedy. (Id). In conclusion, the arbitrator noted that he would retain jurisdiction for the purpose of resolving disputes arising between the parties in the course of their attempt to fashion a remedy. (Id: pg. 238).

By letter dated April 8, 2005, defendant advised plaintiff that while it disagreed with that part of the arbitrator's decision that the form was confusing, it would accept the decision, and would review the form in connection with future surpluses. (Id: 249). For present purposes, after reconstruction of the surplus defendant concluded that even if the clerks had properly completed the forms, they would still have been laid off because they were not qualified to displace junior

4

employees. (JR: pg. 249). Defendant contended that the clerks did not perform similar job functions and possess essentially the same skills as the junior employees. (Id). Defendant also informed plaintiff that it disagreed with the arbitrator's retention of jurisdiction, and would not agree to any additional hearings. (Id: pg. 250).

By letter dated August 8, 2005, the arbitrator agreed with defendant's argument that he was incorrect to retain jurisdiction, absent mutual agreement by the parties. (JR: pg. 272). The arbitrator further noted defendant's conclusion that even accepting his findings on the merits, the clerks would not have been able to displace other employees. (Id). He added a comment that "if there is a cause to pursue that conclusion further, it must be done outside the context of my retained jurisdiction."[3]

On December 5, 2005, plaintiff commenced an action in the United States District Court for the Western District of Texas, alleging that defendant's conduct regarding the confusing language contained in the forms constituted a breach of the CBA. (Complaint: ¶ 6). Plaintiff also alleged that the underlying breach constituted a violation of § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 et seq. (Id: §§ 9, 12).

## Analysis

A.  <u>Standard for Summary Judgment</u>

It is well settled that, pursuant to Fed.R.Civ.P. 56( c ), summary judgment should be granted if all the information shows "there is no genuine issue of material fact and the moving party is

---

[3] Since the arbitrator left open the issue of qualifications, both originally and in his letter, the ultimate procedural question seems to be whether it should be resolved by a new grievance and arbitration or by the original arbitrator.

5

entitled to judgment as a matter of law." Woods v. Wills, 400 F.Supp.2d 1145, 1150 (E.D.Mo. 2005); quoting, Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of clearly establishing the nonexistence of any genuine issue of fact that would be material to a judgment in its favor. Woods, at 1150-51. Once this burden is met, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Woods, at 1151; citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Woods, at 1151. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id; quoting, Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.; quoting, Anderson, 477 U.S. at 248.

A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. Woods, at 1151. The Court is " ' not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.' " Id.; quoting, Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996).

6

B.  Defendant's Motion for Summary Judgment

Defendant contends that plaintiff's breach of contract claim is time-barred. Defendant also contends that the arbitrator's award was final and is not subject to further proceedings. Defendant also argues that plaintiff fails to show that the clerks were qualified to replace junior employees, and were, therefore, harmed.

C.  Plaintiff's Cross-Motion for Summary Judgment

In resistance to defendant's motion, plaintiff seeks confirmation and enforcement of the award, including the arbitrator's initial retention of jurisdiction. As such, plaintiff argues that the case should be remanded to the arbitrator to resolve ambiguities, i.e. the arbitrator's assumption that he could retain jurisdiction and defendant's refusal to proceed any further with the matter.

D.  Statute of Limitations

Initially, defendant contends that to the extent plaintiff alleges breach of the CBA, without seeking further arbitration, the 90 day limitations period set forth in Missouri's Uniform Arbitration Act would apply[4]. In the event plaintiff's allegation is defendant's refusal to arbitrate, defendant contends that a 6 month limitations period would apply. Defendant appears to argue that under any scenario, the cause of action accrued on April 8, 2005, when it refused to participate in any additional hearings. In applying the 6 month limitations period, defendant argues that plaintiff had

---

[4] In support of this contention, defendant relies on Local 2, Int'l Brotherhood of Electrical Workers, AFL-CIO v. Anderson Underground Constr., Inc., 907 F.2d 74, 75 (8th Cir. 1990). However, it's reliance is misplaced, for, unlike here, the issue concerned a motion to vacate.

7

until October 8, 2005, to commence this action. Thus, the filing date of October 14th renders the complaint untimely.

Plaintiff disputes defendant's contentions, and argues that as here, a lawsuit to enforce an award is governed by the applicable state statute of limitations, which in this case would be 5 years. International Bhd. of Teamsters v. Kansas City Piggy Bank, d/b/a Terminal Consolidation Co., 88 F.3d 659, 661 (8th Cir. 1996). Plaintiff contends that the earliest date the limitations period began to run was March 25, 2005, the date the award was issued. Therefore, plaintiff contends that its filing on October 14th was timely.

Plaintiff argues that in the event its complaint is construed as one to compel arbitration, the limitations period would not begin to run until the date it had notice that the matter would not proceed further. This is correct, for it has been held that "[a] cause of action to compel arbitration 'accrues when the grievance procedure is exhausted or otherwise breaks down to the employee's disadvantage[.]' " Teamsters Local No. 688 v. Unisource Worldwide, 157 F.Supp.2d 1081, 1082 (E.D.Mo. 2001); quoting, Cook v. Columbian Chem. Co., 997 F.2d 1239, 1241 (8th Cir. 1993). In arguing for an April 8th accrual date, defendant relies, in a most literal sense, on Judge Limbaugh's finding that "[a] cause of action to compel arbitration under a collective bargaining agreement accrues when one party clearly articulates its refusal to arbitrate the dispute." United Food and Commercial Workers Union Local No. 88, AFL-CIO, CLC v. Middendorf Meat Co., 794 F.Supp. 328, 332 (E.D.Mo. 1992)[5]. I find the interpretation employed in Teamsters to be more persuasive.

---

[5]Defendant's reliance on International Brotherhood of Electrical Workers, Local No. 124 v. Alpha Electric Company, Inc., 759 F.Supp. 1416 (W.D.Mo. 1991), is equally misplaced. In this case, the court found the accrual date to be the date the award was determined rather than the date of the response to the appeal request. However, this finding was based on the fact that the award was "final" inasmuch as it decided both liability and remedy issues. Here, the award did

8

Consequently, even using a 6 month limitations period, the August 5th letter in which the arbitrator gave notice of the conclusion of arbitration, renders plaintiff's complaint timely.

E.      Jurisdiction

A federal court has jurisdiction under the LMRA to enforce or confirm an arbitration award that is final and binding under the collective bargaining agreement. Milk Drivers, Dairy and Ice Cream Employees, Laundry and Dry Cleaning Drivers, Clerical and Allied Workers, Local Union No. 387 A/W International Brotherhood of Teamsters, AFL-CIO v. Roberts Dairy, 2004 WL 729117 *5 (S.D.Iowa 2004). The role of the courts is limited, as courts "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." Id.; quoting, United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567-68 (1960). A reviewing court cannot overturn an arbitration award as long as the award "draws its essence" from the collective bargaining agreement. Id. Moreover, a court cannot overturn an award even if it is convinced the arbitrator committed serious error. Id.

Nonetheless, the issue here would seem to be whether this dispute should be remanded to the arbitrator. There appears to be no dispute that, as noted by the arbitrator, the forms completed by the clerks were "substantially confusing in several respects," ultimately resulting in the termination of employment for the clerks. However, defendant argues that once the arbitrator found the record unclear as to whether their employment rights were affected by the ambiguity of the form, and returned the case to the parties to review and re-construct the scenario using a properly

---

not provide for a remedy, and cannot be construed as final.

completed form, it re-examined the evidence and concluded that the clerks were not qualified to displace junior employees.  For as required under the CBA, they did not perform similar job functions and possess essentially the same skills as the junior employees. Defendant does not elucidate further on the means and/or method by which it arrived at its conclusion, which may be proper since this court does not decide the merits.

Defendant also argues that by his letter of August 8, 2005, the arbitrator clarified the award, concluded that he had no further jurisdiction over the matter, and that, pursuant to certain provisions of the CBA, the award is final. A review of the August 8th letter does not in fact clarify the initial award set out by the arbitrator. For while he admits mistake in his retention of jurisdiction, he simply notes defendant's argument that the clerks would not have been able to displace junior employees. The latter was not a determination made by the arbitrator, but, rather, an acknowledgment of defendant's position. Consequently, this cannot be construed as a clear grant or denial of the relief sought by plaintiff.

The parties argue as to whether the arbitrator could retain jurisdiction. Defendant contends that, absent mutual agreement, the issuance of the award, under the doctrine of *functus officio*, essentially removed any further jurisdiction by the arbitrator over this case. The doctrine of *functus officio* prevents arbitrators from revisiting a final award after the final award has been issued. Legion Inc. Co. v. VCW, Inc., 198 F.3d 718, 719 (8th Cir. 1999). The doctrine is applicable, however, to "final awards." Here, the award issued on March 25, 2005, clearly was not final, in that it did not resolve the question of whether the clerks were laid off in violation of the CBA. The arbitrator's subsequent letter dated August 8, 2005, fares no better in resolving the dispute. It appears, at least as stated by the arbitrator and argued by defendant, the August 8th letter was considered dispositive.

10

Legion, 198 F.3d at 720 (factors in determining if an arbitration award is final are whether the award indicates it is final and whether th arbitrator intended the award to be final). However, an award cannot be final if significant issues still need to be determined. Legion, at 720[6]. Because there remain disputed issues of fact as to breach of contract, summary judgment for defendant would be inappropriate.[7]

Plaintiff, on the other hand, seeks enforcement of the award to the extent that the parties reconstruct the issue of whether the clerks were qualified to displace junior workers. While this court has jurisdiction to enforce an arbitration award, it is limited to enforcing the agreement and may not create one. United Steel Workers of America v. Titan Tire, 359 F.Supp.2d 819, 820 (S.D.Iowa 2005). The arbitrator's award is similar to a contract in that it is the expression of the parties' will. Id. It is also clear that an arbitrator's award must be definite or capable of enforcement. Burgess v. Industrial Delivery Services, Inc., 1984 WL 22071 * 3 (E.D.Mo. 1984). A court may not enforce an award that is indefinite or unclear in its terms, and it has the power to remand an award to the arbitrator that issued it, where the award is incomplete, ambiguous or inconsistent. Id; see also, Automotive Petroleum and Allied Industries Employees Union, Local 618 v. Sears, Roebuck and

---

[6] See also, Local 36, Sheet Metal Workers International Association, AFL-CIO v. Pevely Sheet Metal Co., Inc., 951 F.2d 947, 949-50 (8th Cir. 1992) (for an arbitration to be final and therefore federal court jurisdiction to be proper, there must be a "complete arbitration," sometimes called the "complete arbitration rule.")

[7] I agree with defendant and the arbitrator that he did not have jurisdiction over the remedy. But he did have jurisdiction over the issue of breach, including the qualification of the claimants for other jobs. While he might have held the union to a failure of proof on this subject, he did not do so. He had discretion to seek further information on the issue of breach. The letter mistakenly declined jurisdiction on that point, while being correct in declining jurisdiction over remedial issues such as back pay and reinstatement. If there was a breach, I suppose a new grievance may arise over remedies.

11

Co., 581 F.Supp. 672, 676-77 (E.D.Mo. 1984) (the federal rule of labor law provides that federal courts have the power to remand an arbitration award to the arbitrator that issued it where the award is incomplete, ambiguous or inconsistent)[8]. Here, there is a dispute of fact that should have been resolved by the arbitrator. United Steel, 359 F.Supp.2d at 820; citing, Air Line Pilots Ass'n Int'l v. Aviation Assocs. Inc., 955 F.2d 90, 93 (1st Cir. 1992).

After careful consideration, I conclude the case should be remanded to the arbitrator with directions to resolve the disputed issues regarding breach; that is whether claimants were qualified for other positions.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (ECF doc. 20) is DENIED. It is further

ORDERED that plaintiff's cross motion for summary judgment (ECF doc. 25) is GRANTED in part and DENIED in part. That part of plaintiff's motion seeking remand to the arbitrator is granted, consistent with this opinion.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

November 27, 2006
Kansas City, Missouri

---

[8] The ambiguity must be patent or glaring; latent ambiguities are not a sufficient basis for remand because the judicial scrutiny "would invade the province of the arbitration in contravention of our national labor policy." Automotive Petroleum, 581 F.Supp. at 677; quoting, I.B.E.W. v. Teletype Corp., 551 F.Supp. 676, 679-80 (E.D.Ark. 1982). However, an ambiguous award must be remanded to the arbitrator, rather than clarified by a court, "because a failure to do so would amount to a preemption of the fact finding function assigned to the arbitrator." Id; quoting, United Steelworkers of America v. ICI Americas, Inc., 545 F.Supp. 152, 154-55 (D.Del. 1982).

12